IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE HOGS AND HEROES FOUNDATION INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-768 |
| | * | |
| HEROES, INC., | * | |
| Defendant. | * | |
| | ****** | |

**MEMORANDUM OPINION**

Plaintiff, The Hogs and Heroes Foundation Inc. ("Plaintiff HHF" or "Plaintiff"), brings this declaratory judgment action against Heroes, Inc. ("Defendant Heroes" or "Defendant") seeking a finding of non-infringement and a judgment declaring that Plaintiff's marks will not lead to consumer confusion. Currently pending before the Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction. ECF No. 19. The Court held a telephonic conference to discuss the pending motion on April 14, 2016. *See* Local Rule 105.6 (D. Md. 2016). This Court also held a motions hearing on August 10, 2016. ECF No. 27. The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. This matter, having been fully briefed and argued by both parties, is now ripe for review. For the reasons set forth below, the Court will GRANT Defendants' Motion.

## I.     Background

The following facts are taken from the Plaintiff's Complaint and supplemented by Defendant's Motion to Dismiss and the declarations and exhibits from both parties. Defendant Heroes Inc. is a charitable organization incorporated and located in the District of Columbia.

Defendant Heroes supports the spouses and children of law enforcement officers and firefighters killed in the line of duty in the Washington, D.C. metropolitan area. ECF No. 1 at 2. Plaintiff, The Hogs and Heroes Foundation Inc., is a charitable organization incorporated and located in Maryland. Plaintiff HHF is organized as a "national membership foundation comprised of a community of motorcycle riders," supporting service members and veterans of the United States military and public safety workers including law enforcement, firefighters and emergency medical personal. ECF No. 1 at 2.

On or about June 17, 2014, Plaintiff HHF filed applications with the United States Patent and Trademark Office ("USPTO") to register Plaintiff's service marks, currently pending as Application Nos. 86/311,438 and 86/311,439. It is undisputed that Plaintiff has used this mark continuously for the past eight years without controversy prior to seeking registration. ECF No. 1 at 8; ECF No. 19 at 14. Also undisputed is that Defendant Heroes knew of HHF because HHF had donated money to Heroes' past charitable events. ECF No. 1 at 3; ECF No. 19 at 5.

In April 2015, the USPTO published Plaintiff's Marks in the official Gazette pursuant to Section 12 of the Lanham Act.  On October 21, 2015, Defendant filed with the USPTO its Notice of Opposition before the Trademark Trial and Appeal Board ("TTAB"), alleging that because the Defendant's registered marks identify the Defendant as the source of its services and have acquired distinctiveness in the field of charitable fundraising over the last fifty years, the services of Plaintiff HHF proposed in the application are too similar to the Defendant's as to cause marketplace confusion. ECF No. 20-1 at 7–8. The Opposition is currently pending before the TTAB.

The parties also engaged in settlement talks in the interim. On July 16, 2015, Defendant, through counsel, shared with Plaintiff that it believed Defendant's marks would likely cause

confusion as to the source of, or affiliation between, the parties' respective services. Defendants further communicated how the parties could possibly "avoid an overlap between . . . marks . . . and avoid the cost of an opposition proceeding." ECF No. 21-4 at 1. Defendant proposed that Plaintiff either amend the services identified in its trademark application or forgo using its marks in certain geographic areas where Plaintiff presently uses its marks. ECF No. 21-4 at 1.

Plaintiff also sought confirmation from Defendant that "Heroes not only objects to the registration of HHF's marks . . . but that it also objects to HHF's use of such marks." ECF No. 21-6 at 2. Defendant's counsel thus proposed granting Plaintiff a license to use its marks in exchange for withdrawing its application. ECF No. 20 at 2. Plaintiff HHF asked in turn whether Defendant Heroes would agree not to sue in the future. ECF No. 20 at 2. In response to this broad request, Defendant's counsel "stated that Heroes could not provide this assurance." ECF No. 20 at 2. At the end of the call, the parties agreed to a 90-day suspension of the TTAB opposition proceeding to allow for further settlement negotiations. ECF No. 20 at 3. TTAB proceedings were continued twice through joint request to facilitate such talks. ECF No. 21-6 at 2; ECF No. 20 at 2.

After a few short months of negotiations marked by a handful of phone calls and emails, Defendant's attorney emailed Plaintiff's attorney to follow up regarding the licensure proposal. ECF No. 20-4 at 2. Plaintiff's counsel had not yet discussed licensure with her client. ECF No. 20-5 at 2. Immediately thereafter, Plaintiff ended negotiations and instead sought confirmation that Defendant's counsel would accept service of the instant Complaint on Defendant Heroes' behalf. ECF No. 20 at 3.

Plaintiff in this declaratory judgment action asks this Court to find that its mark does not infringe on Defendant's service marks and declare that Plaintiff's "are not likely to cause

3

consumers to be confused, mistaken or deceived that Plaintiff's services are those of Defendant's or are sponsored, endorsed or approved by Defendant, or that there is some affiliation or connection between Plaintiff and Defendant." ECF No. 1 at 8–9. Defendant Heroes, argues *inter alia* that this Court is without subject matter jurisdiction to hear this case. ECF No. 19. For the following reasons, the Court agrees with the Defendants.

## II.   Standard of Review

Plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). At the motion to dismiss stage, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. A court should grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647. When the jurisdictional facts are intertwined with questions of law, however, it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits. *See United States v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 488 (E.D. Va. 2000).

## III.   Discussion

### 1. Subject Matter Jurisdiction

Plaintiff seeks relief pursuant to The Declaratory Judgment Act. The Act provides that where an "actual controversy within its jurisdiction" exists, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."

28 U.S.C. § 2201(a). "[T]he Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284-85 (Fed. Cir. 2007) (citing *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991) ("In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication.")). A court may exercise jurisdiction over a declaratory judgment action when:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;
> (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and
> (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004).

A declaratory judgment action must satisfy the case or controversy requirement of Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). [1] To do so, it must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*; *Aetna Life Ins. Co.*, 300 U.S. at 241. "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "[T]he question in each case is whether the facts alleged, under

---

[1] "While *MedImmune* was a patent case, a common framework for analysis applies to all patent, copyright, and trademark declaratory judgment suits." *LWRC Int'l, LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 337 n.1 (D. Md. 2011) (citing *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir.2009)).

5

all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

The Supreme Court has not drawn a bright line between declaratory judgment actions that satisfy the case-or-controversy requirement and those that do not. *MedImmune*, 549 U.S. at 127. Rather, a court must consider the particular facts of each case, and weigh "whether the facts alleged show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The test is objective. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009); *accord BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993) ("Although such words and actions are not viewed in isolation of their intended effect on the listener, a subjective apprehension [of suit] is insufficient without objective substance.").

In light of the Supreme Court's decision in *MedImmune*, the former two-part "reasonable apprehension of suit" test has been replaced with a more comprehensive, fact-specific inquiry. *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 892 (D. Md. 2008) (citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.")). Post *Medimmune*, a plaintiff need only show, in short, that "all of the circumstances" establish a "substantial controversy." *Id.* at 901.

Plaintiff directs this Court to five facts which it believes, when taken together, puts before this Court a "substantial controversy": (1) Defendant's opposition to Plaintiff's registration application with the TTAB, (2) two prior federal trademark infringement suits that the Defendant

pursued in the last fifty years, (3) Defendant's "history of opposing registrations" of other marks, (3) settlement discussions where Defendant proposed granting Plaintiff license or geographical restricting Plaintiff's use of the service mark, and (4) Defendant's unwillingness to agree that it would never file suit against Plaintiff in the future.

Applying *MedImmune*'s guidance and the lower courts' treatment of similar circumstances, any "controversy" here is simply too vague and unsubstantiated to support jurisdiction. At the outset, it bears noting that "the existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action." *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011) (citing *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 CIV 7352 JGK, 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010)).  And although Plaintiff does not solely rely on Defendant's opposition in support of jurisdiction, little more reflects an actual controversy capable of resolution in this Court.

Plaintiff relies heavily on Defendant's prior attempts to protect its mark through litigation as evidence that Defendant is willing and prepared here to do the same. Plaintiff further relies on *Neuralstem*, 573 F. Supp. 2d at 893 to buttress its analysis. *Id.* (where a plaintiff alleges "a course of conduct that shows a preparedness and willingness to enforce its patent rights . . ."). But unlike the robust history of patent litigation between the parties in *Neuralstem*, here Plaintiff asserts that Defendant Heroes' two prior infringement actions brought against **other** parties (not the Plaintiff) over the last fifty years somehow reflects a willingness to bring an infringement action against Plaintiff. *See HEROES, Inc. v. Heroes, Inc.*, 1:02-cv-02806-JFM (D. Md.) and *HEROES, Inc. v Boomer Esiason Hero's Benevolent Fund, Inc.*, 1:96-cv-01260-TAF (D.D.C.). ECF No. 1 at 8. Given that Heroes' prior cases are remote, episodic, and not related to Plaintiff,

they add little to Plaintiff's claims that a substantial controversy exists between it and Defendant. *See, e.g.*, *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 791 (E.D. Va. 1997) (five patent actions over 27 years was "too remote to support a claim of reasonable apprehension of suit"); *Waters Corp. v. Hewlett-Packard Co.*, 999 F. Supp. 167, 173 (D. Mass. 1998) ("[c]onsidering that [defendant] owns more than 4,400 patents, the fact that it has sued on eight unrelated patents in 23 years hardly establishes litigiousness sufficient to convert licensing negotiations into a threat of suit."); *Premo Pharm. Labs., Inc. v. Pfizer Pharm. Labs., Inc.*, 465 F. Supp. 1281 (S.D.N.Y. 1979) (thirty-eight lawsuits over 17 years did not create an actual controversy).

Along a similar vein, HHF makes much of Defendant's "more than seventy-five" opposition proceedings with TTAB regarding registration of other marks unrelated to this action. ECF No. 21 at 8; *see also* ECF No. 21-7. Defendant counters that its prior conduct reflects its willingness to negotiate rather than litigate and highlights that 65 of the 78 proceedings ended with Defendant either *withdrawing* its opposition or never formally opposing the mark at all. ECF No. 22 at 7. Again, although prior litigious conduct can shed some light on the Court's analysis, *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 776 (D. Md. 2009) (citing *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008)), here, it is simply not enough to reflect an actual controversy. The other proceedings took place exclusively in TTAB and at no point rose to the level of Defendant even threatening infringement suits. Nor did they ever involve Plaintiff's mark despite Plaintiff's continued use of the same over the last eight years.

Nor do the parties' brief settlement discussions reflect any present and actual controversy between the parties. Plaintiff vigorously maintains that Defendant's proposed license and

8

geographic restriction transforms this case into an actual dispute about Plaintiff's *use* of the mark. However, the realities of the registration process means that use of the mark will, to some degree, will be raised during settlement talks. Accordingly, "the fact that settlement discussions have linked the issues of registration and use does not push this dispute into the territory of federal jurisdiction." *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 396 (S.D.N.Y. 2011).

On this, the Court finds *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.* persuasive. There, the Plaintiff sought registration of its mark which Defendant opposed in the TTAB proceedings. The parties then "exchanged various settlement proposals, which included terms under which Vina Casa might continue to *use* the [ ] mark." *Id.* at 394 (emphasis added). The *Vina Casa Tamaya* court, relying on a pre-*MedImmune* decision, *Progressive Apparel Group, Inc. v. Anheuser–Busch, Inc.*, No. 95 Civ. 2794, 1996 WL 50227, at *4 (S.D.N.Y. 1996), found no justiciable controversy even when the defendant had opposed a declaratory plaintiff's trademark registration, requested that the plaintiff abandon its application, and sought in settlement negotiations to limit the plaintiff's use of the mark. *Vina Casa Tamaya*, 784 F. Supp. at 396 (S.D.N.Y. 2011) ("Nor is it significant that the parties engaged in settlement negotiations that included discussions of plaintiff's use—not just its registration—of the [ ] mark . . . Seeking to obtain a concession in negotiations is a far cry from threatening to bring a coercive lawsuit to obtain the desired result.") (citing *Progressive Apparel*, 1996 WL 50227 at *2). Similarly here, the parties' limited discussions regarding use of the mark in the future does not amount to a substantial controversy.

This is so even though Defendant sought licensure or geographic restriction as part of a potential negotiated settlement. In this regard, the parties' settlement talks bear little resemblance

to the cases on which Plaintiff relies to support conferring jurisdiction. ECF No. 21 at 13. In *Neuralstem*, for example, the Defendant issued a press release *requiring* any party who wished to us its patented stem cell technology to obtain a license or face litigation. The *Neuralstem* Defendant also issued a threatening demand letter to the plaintiff and filed an infringement action one day after the plaintiff filed its declaratory action. 573 F. Supp. 2d at 892-93. Similarly in *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007), the patent owners sent plaintiff letters that indicated specific infringing products and claims of infringement, required a "discounted license," and noted plaintiff would sustain a $31 million royalty. By contrast here, Defendant's settlement discussions have not been paired with acts reflecting an imminent or coterminous infringement suit.

Indeed, the parties' settlement talks at no point amounted to "thinly veiled threats of litigation." *Superguide Corp. v. Kegan*, 987 F. Supp. 481, 483 (W.D.N.C. 1997). Nor did Defendant ever pen a cease-and-desist letter, the very purpose of which is to put Plaintiff on specific notice that further use of the mark would result in infringement litigation. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 999 (D. Md. 1985); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)). Defendant also did not convey that litigation was imminent were Plaintiff to reject Defendant's proposals. *Cf. Neuralstem*, 573 F. Supp. 2d at 890 (issuing press release conveying that any unlicensed use of a patent related to previous litigation was one of multiple factors evincing an actual controversy). Accordingly where, as here, the parties have engaged in little more than negotiations surrounding TTAB opposition proceedings, the dispute does not rise to the level of a substantial controversy conferring jurisdiction on this Court pursuant to the Declaratory Judgment Act. *See, e.g.*, *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1379 (Fed. Cir. 2010)

(defendant's representations to the Food and Drug Administration that the technology at issue was the same, phone calls between executives with "impromptu" predictions of the defendant's response to the technology, and prior patent enforcement history); *Prasco*, 537 F.3d 1329 (patentee's marking of its products, history of enforcing patent rights, and failure to sign a covenant not to sue); *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 455 (E.D.N.Y. 2012) (defendant counsel's comment regarding the plaintiff's use and TTAB opposition proceedings); *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 158 (D. Mass. 2009) (a letter with patent portfolio notifying plaintiff of possible infringement, dialogue between parties, and a scheduled meeting to discuss licensing proposals).

Equally significant, although Defendant was unable to promise that it would *never* file suit, it communicated *no intention* to bring an action at the current time. ECF No. 19 at 12. *See 1-800-Flowers.com*, 905 F. Supp. 2d at 458 (rejecting the plaintiff's arguments that an "isolated and rather general comment that defendant objected to plaintiff's use of its mark, either on its own or viewed in conjunction with the language present in the Oppositions, meets the *MedImmune* standard"); *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008) (concluding the existence of three separate cease-and-desist letters insufficient to meet the *MedImmune* standard when "[t]he prospect of litigation was not mentioned by either party, and Defendant's tone in its letters, while protective of what it perceives to be its legal interests, was certainly not threatening."). Thus, although after *Medimmune* threats of imminent litigation may no longer be dispositive, Defendant's communication here cannot fairly be construed as a "threat" of any kind. Rather, Defendant communicated a relatively noncontroversial proposition that such an expansive promise not to sue *forever* is beyond the scope of the instant registration action.

11

2.  *Discretion to Exercise Jurisdiction*

The Court further notes that even if it had jurisdiction here, it would still decline to exercise it. A district court generally maintains discretion as to whether it will elect to "declare the rights and other legal relations of any interested party." *MedImmune*, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a), not that it must do so.") (emphasis in original); *Micron Tech. Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008) ("The word 'may' within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place."). If the court declines to entertain a declaratory judgment action, it must do so only for "good reason." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (citations omitted); *Pub. Affairs Associates, Inc., v. Rickover*, 369 U.S. 111, 114 (1962).

The Fourth Circuit has identified four factors that this Court should consider in deciding whether to exercise its discretion in granting declaratory relief: (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; and (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing-that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422-23 (4th Cir. 1998) (internal quotations omitted).

The heart of this matter concerns the registration of Plaintiff's service mark which will properly be resolved in the TTAB proceeding already underway. Moreover, because the Defendant does not object to the Plaintiff's current use of the mark (as evidenced by its repeated

averments that it will not file suit and its historic lack of opposition to plaintiff's historic, eight-year use), "the pursuit of this action does not further an efficient resolution of any dispute between the parties." *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 397 (S.D.N.Y. 2011) (quoting *Bruce Winston*, 2010 WL 3629592 at *6); *see also Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir. 1963) ("The plaintiff is not in the position of one who is threatened with legal proceedings but does not know when or where the blow will fall. The [registration] proceedings in Puerto Rico and the defendant's opposition are actual; the right of both parties will be determined in due course."). In this way, the Court is hard-pressed to identify the "insecurity, uncertainty or controversy" it would need to resolve. Finally, no evidence suggests that Plaintiff sought declaratory judgment to engage in procedural fencing, and so the fourth factor is of no moment to the Court's determination. Accordingly, had subject matter jurisdiction existed, the Court would decline exercise such jurisdiction pursuant to the Declaratory Judgment Act.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction will be GRANTED. A separate order will follow.

 8/18/2016                                                              /S/
Date                                                       Paula Xinis
                                                           United States District Judge